(January 31, 1906.)

## STATE v. CALLOWAY.

[84 Pac. 27.]

CITY ORDINANCE—SALE OF INTOXICATING LIQUORS—SALOONS—REGULA-
TION OF—MIDNIGHT AND SUNDAY CLOSING—ENTERING SALOON DUR-
ING PROHIBITED HOURS—REASONABLE REGULATION—RIGHT OF PROP-
ERTY—PRIVILEGE AND IMMUNITY OF CITIZEN—CLASSIFICATION—DUE
PROCESS OF LAW—CONSTITUTIONAL LAW—FOURTEENTH AMENDMENT
TO UNITED STATES CONSTITUTION—TITLE TO ORDINANCE.

1. Under the provisions of subdivision 4 of section 37 of the charter of Boise City, the city council has power and authority to enact ordinances and make reasonable regulations therein for the sale of intoxicating liquors both at retail and wholesale.

2. Ordinance No. 642 of said city is not repugnant to the general laws of the state.

3. The following provisions of ordinance No. 642 of the said city, to wit: ''And it is hereby made unlawful for the proprietor of such a place or wherein is contemplated the sale of intoxicating liquors to permit any person or persons other than himself and family to enter such room and place where intoxicating liquors are sold during the hours when the sale of such liquors is pro-hibited,'' is a reasonable regulation, and the common council had the power and authority to enact it.

4. The provisions of said ordinance making it a misdemeanor for the proprietor of a place where intoxicating liquors are sold to permit any person or persons other than himself and family to enter such place during the hours when such place must be kept closed, is a reasonable regulation and not contrary to the provisions of the constitution or general laws of the state.

5. The power to prohibit the sale of intoxicating liquors in the interest of the public safety, welfare, good order and happiness of the people during certain prescribed periods by the proper legistive body is no longer an open question.

6. Under the provisions of said ordinance it is immaterial for what purpose the proprietor admits the prohibited person into such building. The offense is committed if he permits any person except members of his own family to enter his place of business during prohibited hours.

7. Said ordinance is equally applicable to all dealers in intoxicating liquors, whether at wholesale or retail, and is not class legislation within the well-defined meaning of that term. The classification there made is natural, practical and reasonable. That being true, it is valid and constitutional. In enacting police regulation, if the classification therein made is usual, practical and reasonable, that is sufficient.

8. Said ordinance does not infringe any right, privilege or immunity secured to the citizen by the federal or state constitution.

9. The control of the liquor business is within the police power of the state, and restrictions which might lawfully be imposed upon it might be obnoxious as an illegal restraint of trade when applied to other pursuits or avocations.

10. The right to sell liquor is not an inherent right of the citizen, and to prohibit him from keeping open his place of business from 12 o'clock midnight to 6 o'clock in the morning, and from 12 o'clock Saturday nights until 6 o'clock the following Monday morning does not deprive him of property without due process of law. Said ordinance is a restraint upon the business therein named and in no wise contemplates a destruction of the business, but places it within the bounds therein named and is simply a regulation and a restraint.

11. The title to said ordinance, to wit: "An ordinance regulating the hours in which intoxicating liquors shall be sold in Boise City, and for Sunday closing, and providing a penalty for the sale thereof during prohibited hours," expresses the object and purpose of said ordinance, and is sufficiently comprehensive to include all of the provisions of said ordinance.

(Syllabus by the court.)

APPEAL from District Court of Ada County. Case tried by Honorable Frank J. Smith, Judge of the Seventh District.

The defendant was convicted of violating what is known as the closing ordinance of Boise City. Judgment affirmed.

The facts are stated in the opinion.

Hawley, Puckett & Hawley, for Appellant.

The general requisites of a valid municipal ordinance, one legally binding upon all whom it is designed to operate, are briefly summarized in section 14 of McQuillan on Municipal Ordinances. A municipal corporation has only such powers as have been expressly delegated to it, and their appropriate incidents. (*Wilson v. Beyers*, 5 Wash. 303, 34 Am. St. Rep. 858, and note, 33 Pac. 90; *South Covington Ry. Co. v. Berry*, 93 Ky. 43, 40 Am. St. Rep. 161, and note, 18 S. W. 1026; *Phillips v. City of Denver*, 19 Colo. 179, 41 Am. St. Rep. 230, 34 Pac. 902.) In order to be valid under such circumstances the ordinance must be reasonable in its terms. (21 Am. & Eng. Ency. of Law, 985-990; 1 Dillon on Municipal Corporations, 322-325; *Bennett v. Pulaski* (Tenn.), 52 S. W. 913, 47 L. R. A. 278; *Mayor of New York v. Dry Dock etc. R. R. Co.*, 133 N. Y. 104, 28 Am. St. Rep. 614, 30 N. E. 563; *People v. Armstrong*, 73 Mich. 288, 16 Am. St. Rep. 584, 41 N. W. 275, 2 L. R. A. 721, and note.) This particular act, however, in our judgment, not only is not constitutional by reason of its being contrary to the fundamental law of our own state, but is further unconstitutional in that it contravenes section 1 of article 14 of the amendments to the constitution of the United States. (*State v. Nelson*, 10 Idaho, 522, 109 Am. St. Rep. 226, 79 Pac. 79, 67 L. R. A. 808; *Gastenan v. Commonwealth*, 108 Ky. 473, 94 Am. St. Rep. 386, 56 S. W. 705.) The only grounds upon which it can be urged that this ordinance is unconstitutional is that it is not a proper exercise of the police power. Municipal ordinances, to be valid as an exercise of police power, are presumed to be reasonable and necessary, but if unreasonable or oppressive, the court may hold such ordinances void. (*Mayor of New York v. Dry Dock etc. R. R. Co.*, 133 N. Y. 104, 28 Am. St. Rep. 609, 30 N. E. 563; *Robinson v. Mayor etc.*, 1 Humph. (Tenn.) 156, 34 Am. Dec. 625, and notes; *Ritch v. People*, 155 Ill. 98, 46 Am. St. Rep. 315, 40 N. E. 454, 29 L. R. A. 79; *Lake View v. Rose Hill Cem. Co.*, 70 Ill. 191, 22 Am. Rep. 71; *People v. Gillson*, 109 N. Y. 389, 4 Am. St. Rep. 465, 17 N. E.

343.) It is a judicial question whether a trade or calling is of such a nature as to justify police regulations. (*Eden v. People,* 161 Ill. 296, 52 Am. St. Rep. 365, 43 N. E. 1108, 32 L. R. A. 659; *Ragio v. State,* 86 Tenn. 272, 6 S. W. 401; *In re Morgan,* 26 Colo. 415, 58 Pac. 1071; *In re Eight Hour Bill,* 21 Colo. 29, 39 Pac. 328; *Low v. Rees Printing Co.,* 41 Neb. 127, 43 Am. St. Rep. 670, 59 N. W. 362, 24 L. R. A. 702; *Ritchie v. People,* 155 Ill. 98, 46 Am. St. Rep. 315, 40 N. E. 454, 29 L. R. A. 79; *Steffy v. Monroe,* 135 Ind. 466, 41 Am. St. Rep. 436, 35 N. E. 121.) A grant of power to a municipality to regulate lawful occupation and business places is not an express grant of power to locate or prescribe the limits of carrying on lawful occupations on private premises; nor does a general welfare clause in a grant of power confer full and specific power upon the city council for such purpose. (*Phillips v. City of Denver,* 19 Colo. 179, 41 Am. St. Rep. 230, 34 Pac. 902.) The ordinance is void by reason of defects of form. (McQuillan on Municipal Ordinances, sec. 138.)

J. J. Guheen, Attorney General, Charles F. Koelsch, R. P. Quarles, and Charles M. Kahn, for Respondent.

Subdivision 4 of section 37 of the charter of Boise City by express grant of the legislature of the state of Idaho gives to Boise City the right "to license, tax, regulate and restrain bar-keepers, saloon-keepers, dealers in (and manufacturers of) spirituous (vinous) or malt liquors are kept for sale or in any manner disposed of." Under this power the common council of Boise City had the right to pass the ordinance in question. (McQuillan on Municipal Ordinances, p. 761, sec. 480; also *Smith v. Knoxville,* 3 Head (Tenn.), 245; *Gabel v. Houston,* 29 Tex. 335; *Maxwell v. Jonesboro,* 11 Heisk. (Tenn.) 257; *Tarkio v. Cook,* 120 Mo. 1, 42 Am. St. Rep. 516, 25 S. W. 202; *Provo City v. Shurtliff,* 4 Utah, 15, 5 Pac. 302; *Ex parte Wolf,* 14 Neb. 24, 14 N. W. 660; *Staates v. Washington,* 44 N. J. L. 605, 43 Am. Rep. 402; *Decker v. Sargeant,* 125 Ind. 404, 25 N. E. 458; *Town of Minden v. Silverstein,* 36 La. Ann. 912; *City of Portland v. Schmidt,* 13 Or. 17, 6 Pac. 221.) The said ordinance is not repugnant to

the general laws of the state. (*Ex parte Cowert,* 92 Ala. 94, 9 South. 225; *City of Pekin v. Smelzel,* 21 Ill. 464, 74 Am. Dec. 105; *Smith v. Knoxville,* 3 Head (Tenn.), 245.) Under the law as stated in the brief of counsel for appellant, and under the authorities submitted by respondent, we contend that Boise City had the express power to pass said ordinance, and if this court finds that said ordinance does not violate the federal or state constitution, said ordinance cannot be attacked upon the ground of its being unreasonable. (*Skaggs v. Martinsville,* 140 Ind. 476, 49 Am. St. Rep. 209, 39 N. E 241, 33 L. R. A. 781; *Commonwealth v. Worchester,* 3 Pick. 462; McQuillan on Municipal Ordinances, sec. 181; *City of Cairo v. Feuchter,* 159 Ill. 155, 42 N. E. 308.) The distinction that counsel attempts to draw between wholesale liquor houses and retail liquor houses or saloons cannot avail for the reason that no such distinction is recognized under the law, and the liquor traffic as a whole is subject to different laws and regulations than any other line of business. (*Mugler v. State,* 123 U. S. 623, 8 Sup. Ct. Rep. 273, 31 L. ed. 205; *Crowley v. Christensen,* 137 U. S. 86, 11 Sup. Ct. Rep. 13, 34 L. ed. 620.) There can be no question that the closing of saloons on Sundays is a reasonable exercise of the police power of cities. (*Kurtz v. People,* 33 Mich. 278; *Cranor v. City of Albany,* 43 Or. 144, 71 Pac. 1042; *State v. Binnard,* 21 Wash. 349, 58 Pac. 210.) Ordinances closing saloons and places where liquor is sold during certain hours in the night have universally been upheld as reasonable. (*Maxwell v. Jonesboro,* 11 Heisk. (Tenn.) 257; *Ex parte Wolf,* 14 Neb. 24, 14 N. W. 660.) Counsel for appellant would have this court believe that this is the only construction that has been placed upon ordinances which exclude all people from these places during prohibited hours, but such is not the case. (*Paul v. City of Washington,* 134 N. C. 363, 47 S. E. 793, 65 L. R. A. 902. This case was cited with approval in the case of *People v. Roby,* 52 Mich. 577, 50 Am. Rep. 273, 18 N. W. 365; *Village of St. Anthony v. Brandon,* 10 Idaho, 205, 77 Pac. 322.) The general rule as to the reasonableness of ordinances as laid down by the great majority of text-writers and the

courts of last resort in the various states is that the municipality itself is the best judge respecting the necessity and reasonableness of their ordinances. (McQuillan on Municipal Ordinances, sec. 186, and cases thereunder cited; Dillon on. Municipal Corporations, sec. 400; *Mayor of New York v. Drydock etc. R. R. Co.*, 133 N. Y. 104, 28 Am. St. Rep. 614, and note, 30 N. E. 563; *Bennett v. Pulaski* (Tenn.), 52 S. W. 913, 47 L. R. A. 278; *Paul v. Washington*, 134 N. C. 363, 47 S, E, 793, 65 L. R. A. 902; *State v. Gerhardt*, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 319.)  Counsel for appellant urges that the ordinance is unconstitutional, for the reason that it contravenes section 1 of article 14 of the amendments of the constitution of the United States, more particularly in that it abridges the privileges of a citizen and deprives a person of liberty and property and also that it is unconstitutional because it is class legislation.  This question has come up in the supreme court of the United States, and in those cases the court in no uncertain language has held the position taken by counsel for appellant is untenable.  (*Crowley v. Christensen*, 137 U. S. 86, 11 Sup. Ct. Rep. 13, 34 L. ed. 620; *Adams v. Cronin*, 29 Colo. 488, 69 Pac. 590, 63 L. R. A. 67; *Schwuchow v. City of Chicago*, 68 Ill. 444; *Ex parte Christensen*, 85 Cal. 208, 24 Pac. 747.)  We submit that under the rulings of this court on the words "regulate" and "license" in the case of *Village of St. Anthony v. Brandon*, 10 Idaho, 205, 77 Pac. 322, counsel's contention that this ordinance prohibits and does not restrain and regulate, is not well taken.  (*In re Grand Jury*, 62 Fed. 828; *City of Emporia v. Volmer*, 12 Kan. 622; *Cantini v. Tillman*, 54 Fed. 969; *Smith v. Knoxville*, 3 Head (Tenn.), 245; Black on Intoxicating Liquors, sec. 227; *Provo City v. Shurtliff*, 4 Utah, 15, 5 Pac. 302.)  The ordinance is not defective in form.  (*Wiggins v. City of Lewiston*, 8 Idaho, 527, 69 Pac. 286.  See, also, *State v. Cantieny*, 34 Minn. 1, 24 N. W. 458; *People v. Mellen*, 32 Ill. 181; *Brewster v. Syracuse*, 19 N. Y. 117; *Appeal of Esling*, 89 Pa. St. 205; *Village of St. Anthony v. Brandon*, 10 Idaho, 205, 77 Pac. 322.)

SULLIVAN, J.—The appellant was convicted of the crime of keeping open his saloon in Boise City after the hour of midnight, or between midnight and the hour of 6 o'clock the following morning; and in another and separate suit he was convicted of keeping open his saloon in said city on the day of the week known as Sunday, in violation of the provisions of ordinance No. 623 of the ordinances of said city. From which convictions he appealed to the district court, where both cases were tried upon an agreed stipulation of facts, and the appellant was again convicted, from which judgments the appellant appeals to this court. It is agreed between respective counsel that as the same legal questions are involved in each case, both cases shall be submitted to this court upon the same briefs and arguments. The cases were tried in the court below upon an agreed statement of facts, which is as follows:

"It is stipulated and agreed by and between the parties hereto that the above-entitled cause shall be tried and determined by the court without a jury, and that a jury is expressly waived.

"It is further stipulated and agreed by and between the parties hereto that the facts in this case are as follows:

"1. That on the sixth day of July, 1905, at a regular meeting of the common council of Boise City, Idaho, said common council passed an ordinance No. 623, which said ordinance was on the eighth day of July, 1905, duly approved by the mayor of said city; and which said ordinance since last-mentioned date has not been repealed, and which said ordinance is in the words and figures following, to wit:

"'Ordinance No. 623—By Barber.

"'An Ordinance Regulating the Hours in Which Intoxicating Liquors shall be Sold in Boise City, and for Sunday Closing, and Providing for a Penalty for the Sale Thereof During Prohibited Hours.

"'Boise City Does Ordain as follows:

"'Sec. 1. Any room where intoxicating, spirituous, vinous or malt liquors are sold by virtue of a license under the ordinances of Boise City, shall be so arranged that the same shall be securely closed and locked and admission thereto prevented;

and the same shall be securely locked and all persons excluded therefrom each and every day, after the hour of 12 o'clock midnight until the hour of 6 o'clock A. M., following, and on Sundays from 12 o'clock Saturday night until 6 o'clock A. M., on Monday mornings, and no intoxicating liquors shall be sold between such hours.

" 'And it is hereby made unlawful for the proprietor of such a place and the business herein contemplated of selling intoxicating liquors, to permit any person or persons other than himself and family to enter such room and place where intoxicating liquors are sold during the hours when the sale of such liquors is prohibited.

" 'Sec. 2. Any person or persons failing to comply with the provisions of Section 1 of this ordinance, or violating any of the provisions of said Section 1, shall be deemed guilty of a misdemeanor, and upon conviction in the Police Magistrate's Court of Boise City shall be fined in any sum not exceeding Two Hundred ($200.00) Dollars, or by imprisonment in the city jail for a period not to exceed sixty days, or both such fine and imprisonment.

" 'Sec. 3. This ordinance shall take effect and be in full force from and after the 8th day of July, 1905.'

"2. That on the 23d day of July, 1905, defendant, Frank Calloway, was a citizen of the United States and the owner of that certain saloon known as the Exchange Bar, situate in Boise City, Idaho, and was operating said saloon at said time under a saloon liquor license issued by Boise City.

"3. That said defendant, Frank Calloway, did on the twenty-third day of July, 1905, said day being the first day of the week commonly called Sunday, allow and permit people to enter his said saloon for the purpose of purchasing intoxicating liquors."

These cases involve the legality or constitutipnality of said ordinance No. 623, and the only question before the court is whether or not said ordinance is a valid and existing ordinance of said city.

It is first contended that the common council of Boise City is not by the charter of said city given the power to pass such

ordinance. Subdivision 4 of section 37 of the charter of said city grants to said city the right "to license, tax, regulate and restrain bar-keepers, saloon-keepers, dealers in (manufacturers of) spirituous (vinous) or malt liquors (and places where such liquors) are kept for sale or in any manner disposed of." The provisions of said grant are broad enough to authorize reasonable regulation of the persons and business therein referred to. Then if the provisions of said ordinance are reasonable, the common council had the authority under the charter to enact said ordinance. In McQuillan on Municipal Ordinances, section 480, the author says: "Charter power to regulate saloons and dramshops is usually considered as ample to justify penal ordinance prescribing the hours when such places shall open and close." (*Smith v. Knoxville*, 3 Head (Tenn.), 245; *Gabel v. Houston*, 29 Tex. 335; *Maxwell v. Jonesboro*, 11 Heisk. (Tenn.) 257; *Tarkio v. Cook*, 120 Mo. 1, 42 Am. St. Rep. 516, 25 S. W. 202; *Provo v. Shurtliff*, 4 Utah, 15, 5 Pac. 302; *Ex parte Wolf*, 14 Neb. 24, 14 N. W. 660; *Staates v. Washington*, 44 N. J. L. 605, 43 Am. Rep. 402; *Decker v. Sargeant*, 125 Ind. 404, 25 N. E. 458.) Second, it is contended that said ordinance is repugnant to the general laws of the state. There is nothing in this contention, as the general laws contemplate a reasonable control of the liquor traffic, and the legislature has authorized the proper officers of Boise City to enact such ordinance as they may deem best for its reasonable regulation and control. This ordinance in no manner conflicts with the general laws of the state. It is admitted by counsel for the appellant that the common council has the authority to make reasonable regulations in regard to the conduct of the saloon business and the sale of intoxicating liquors within Boise City. But he contends that the following provision of said ordinance is unreasonable and therefore unconstitutional, to wit: "And it is hereby made unlawful for the proprietor of such a place and the business herein contemplated, of selling intoxicating liquors, to permit any person or persons other than himself and family to enter such room and place where intoxicating liquors are sold during the hours when the sale of such liquors is prohibited." It is

argued that this prevents the hired help of the proprietor of the saloon from entering such place during the prohibited hours to clean up the place and put it in order for the next day's business, and that it prevents the bookkeeper of the proprietor from going into such place for the purpose of posting his books and arranging his accounts. All except the proprietor and his family are prohibited from entering the place where such liquors are sold each and every day after the hour of 12 o'clock midnight, until the hour of 6 o'clock the next morning following, and on Sundays from 12 o'clock Saturday midnight until 6 o'clock A. M., on Mondays. I do not think that an unreasonable regulation, for it would seem that eighteen hours out of twenty-four was a reasonable time for the proprietors of saloons to do their business, clean up their places of business and keep their books; and it does seem that the good health of the proprietor of the saloon and his bar-keeper and bookkeeper, as well as that of the citizen, and the good order of the city would require that saloons be closed from 12 o'clock midnight until 6 o'clock the following morning, and on Sundays. While the saloon and liquor business may be a very strenuous business, I do not think that the health of the people and the peace and quiet of the community demands that business to be carried on for more than eighteen hours during a single day. It certainly would be hard to convince the general public that the peace, good order and welfare of a community demanded dramshops and even wholesale liquor stores to be kept open for twenty-four hours per day.

It is most strenuously contended by counsel for the appellant that this ordinance makes the gist of the offense the entering of such room and place where intoxicating liquors are sold, and that it was undoubtedly the intention of the framers of that ordinance to make the gist of the offense the selling. of intoxicating liquors during the prohibited hours. It is clear to me that the object of said ordinance was to prohibit the sale of intoxicating liquors during the prohibited hours, and that the only effective way to do so was to make it a misdemeanor for the proprietor to permit any person other

than his family to enter his saloon during the prohibited hours. Great reliance is placed by counsel for appellant upon the case of *Bennett v. Pulaski* (Tenn.), 47 L. R. A. 278. That action was brought by a retail liquor dealer doing business in Pulaski, against the mayor and aldermen of that town, to enjoin them from enforcing against him certain ordinances enacted by the municipal authorities on the ground that they were arbitrary, unreasonable, oppressive, contrary to common rights and deprived him of his property without due process of law, and that they were passed in obedience to the edicts of the church to which the mayor and aldermen belonged, for the purpose of furthering its propaganda for the prohibition of the liquor traffic and not to regulate it. The validity of four ordinances were involved in that action, and they are designated, first, as the "Curtain Ordinance"; second, the "Letting in and Out Ordinance"; third, the "Insertion of Hours of Business in Saloon License Ordinance," and the "Closing and Opening Hour Ordinance." The court held that the ordinance requiring the curtains to front windows and doors of the lower story of a retail liquor house to be hoisted, raised up or otherwise removed from sunset to sunrise during the night was unreasonable and invalid as applied to the retail liquor dealer. Also that the ordinance requiring saloons to be closed between 10 P. M., and 4 A. M., and also on Sunday, is a reasonable and valid exercise of the power to regulate such business, and that the ordinance making it a misdemeanor to let persons in or out of the saloon during the hours in which the saloon is required to be closed is unreasonable and void; and that the ordinance requiring the insertion in every saloon license the legal hours in which the saloon-keeper is permitted to do business is not invalid as it is harmless though useless. The court also held without comment, arguendo, or citation of authorities, that the letting in and out ordinance was open to the objection that it was unreasonable and void. The court further held that the motive that prompted the enactment of such ordinance could not be considered by the court in determining whether the ordinance was reasonable or unreasonable or oppressive. The court

in commenting upon the authority of the municipality to determine in the first instance what regulations of the whisky traffic were proper and reasonable, said: "The court is also of the opinion that it is within the province of the municipal authorities of the town to determine, in the first instance, what regulations of the whisky traffic within its limits are proper and reasonable for the preservation of the peace, quiet and good order, and that, if reasonable and in conformity to its charter and the general law, the court cannot substitute its judgment for that of the authorities as to the need of the community in the matter." It will be observed that that court held the ordinance requiring saloons to be closed between 10 o'clock P. M. to 4 o'clock A. M., and also on Sunday, was a reasonable and valid exercise of the power to regulate such business. The said letting in and out ordinance made it a misdemeanor for the owner of a saloon or his clerk to let a person in or out of such saloon between the prohibited hours, and also made it unlawful for any person to go in or out of such saloon except the owner or clerk, between such hours. This court is not inclined to follow the supreme court of Tennessee upon the question of the letting in or out ordinance, as the decided weight of authority is adverse to the position taken by that court.

The supreme court of the state of North Carolina, in the case of *Paul v. City of Washington,* 134 N. C. 363, 47 S. E. 793, 65 L. R. A. 902, which was a case involving the validity of an ordinance requiring liquor saloons to be closed between 8 o'clock in the evening and 6 o'clock in the morning, and forbidding the doors to be open during those hours, was not unreasonable. That court also held that an ordinance forbidding the owners or employees in places where liquors are sold to be in such places between the hour of closing on Saturday night and the hour for opening on Monday morning, is not so clearly unreasonable as to require the court to set aside an ordinance making such provision. From the language there used the court evidently concluded that the ordinance came very close to the line of "unreasonableness" as they say it is not so "clearly" un-

reasonable. But in the case at bar this court concludes that the provisions of said ordinance are clearly reasonable.

It was contended in that case that said ordinance was arbitrary, oppressive, vexatious, unreasonable and void, in that it deprived the plaintiff of the use and convenience of his property without due process of law. The court held against the liquor dealer on that proposition, and further held that police regulation statutes are valid unless the purpose or necessary effect is not to regulate the use of property but to destroy it. And in the case at bar it certainly will not be contended that the provision of the ordinance prohibiting any person from entering the saloon except the owner and his family would deprive him of the use and convenience of his property without due process of law. In the last-mentioned case the owners of the saloon were excluded from their places of business during prohibited hours and still it was held reasonable, while in the ordinance in question the owner and his family are permitted to enter the saloon during prohibited hours. If people can be legally restrained from working more than eight hours per day in some of the ordinary avocations of life, it certainly does not seem unreasonable that liquor dealers should be restrained from plying their vocation more than eighteen hours per day.

In the case of *State of Indiana v. Gerhardt,* 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313, the court said: ''The power to prohibit the sale of intoxicating liquors in the interests of public safety or welfare during certain prescribed periods is not denied. The legislature possessing the right, as it unquestionably does, may further extend or exercise it so as to require a proprietor of a liquor saloon to securely close the same and permit no person to enter therein during the time when the sale of intoxicating liquor is forbidden.'' That case involved the validity of a statute, but that makes no difference so far as this case is concerned. The legislature in this state has authority to regulate the sale of intoxicating liquors, and the charter of Boise City authorizes the city to regulate the liquor traffic within its corporate limits. A part of the statute under consideration in the case

last above cited is substantially the same as that provision of the ordinance here under consideration, and makes it unlawful for the proprietor of a saloon to permit any person or persons other than himself and family to go into such room and place where intoxicating liquors are sold upon the days and hours when the sale of such liquors is prohibited. In commenting on that provision, the supreme court there said: "It is true that the part relative to the exclusion of persons is somewhat sweeping, making but one exception. However, criminal statutes are not always literally construed, and possibly an emergency might arise of great necessity to admit some one other than those mentioned in the section; and while such admission might infringe upon the letter of the statute, it would not come within its spirit, and the court under the particular circumstances might make the necessary exception." (See, also, *Davis v. Fasig,* 128 Ind. 271, 27 N. E. 726.) It would seem to me that the effect of the ordinance would be nullified if such places were permitted to be kept open and visited by everybody who desired to do so.

In *McCarty v. City of Atlanta,* 121 Ga. 365, 49 S. E. 287, the court said: "If once excuses were admitted for keeping open such places upon prohibited days or after prohibited hours, the law would be practically nullified. It would rarely be possible for the state or city to meet the excuses or to show that the place had been open for an unlawful purpose. The fact furnishing the excuse of the illegal act after the innocent entry would be so blended that they could not be separated. The opening, absolutely prohibited by law, would be legalized by the motive with which the prohibited act was done. If such excuse could be given in one case, it could be in others, and the issue on each trial would be diverted from the question as to whether the place had been open at an unlawful hour into a consideration of the question as to whether it had been opened for an innocent purpose. It is manifest that any such construction would in effect repeal the law and be utterly subversive of the very policy on which it was enacted." In that case and in the case of *State v. Binnard,* 21 Wash. 349, 58 Pac. 210, it apparently is held that the very gist of

such ordinances and statutes is the opening of liquor saloons during prohibited hours and not the purpose for which they were open.

In *People v. Waldrogel*, 49 Mich. 337, 13 N. W. 620, the defendant was arrested for allowing persons in his saloon for the purpose of cleaning it out during prohibited hours. It was there held that the question of intent is wholly immaterial under the statute there involved; that the legislature in order to guard against the danger of sales being made had directed that the place where liquors are kept should be closed so that no opportunity to violate it by making sales should be afforded, and that such places must be closed and cannot be kept open for any business purpose of any kind.

In *People v. Roby*, 52 Mich. 577, 50 Am. Rep. 273, 18 N. W. 365, the court said: "The purpose for which the bar was open was immaterial; the offense was committed by opening it for cleaning as much as it would have been by opening it for the sale of liquors."

In the case of *Village of St. Anthony v. Brandon*, 10 Idaho, 205, 77 Pac. 322, which was a case where a restaurant or lunch counter was conducted in a room where intoxicating liquors were sold, this court held that the sole purpose of the ordinance there under consideration was to control the retail liquor trade of that village as to best preserve the quiet and peace of its citizens, and if the room where the saloon was kept is permitted to be kept open during the prohibited hours the officers would be hampered in the enforcement of the ordinance. We therefore conclude from the decided weight of authority and the reason of the case that the letting in and out ordinance is not unreasonable, and that under the charter of Boise City and the general statutes of the state, the city council was authorized to enact the same.

Counsel for appellant contends that said ordinance is unconstitutional, upon the ground that it is class legislation and contravenes section 1 of article 14 of the amendments of the federal constitution, in that it abridges the privileges of the citizen and deprives him of liberty and property. Said section of the constitution provides, among other things, that

"no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." As to said ordinance being class legislation, it applies to all dealers in intoxicating liquors and applies equally to all of that class. That classification is natural, practical and reasonable; and where the classification is natural, practical and reasonable, the uniform holding of the supreme court of the United States and of the several state supreme courts is that such classification is valid and constitutional. (*Magoun v. Illinois T. & S. Bank,* 170 U. S. 283, 18 Sup. Ct. Rep. 594, 42 L. ed. 1037.) The court in that case held that the state may distinguish, select and classify objects of legislation, and necessarily the power must have a wide range of discretion. If the classification is practical, that is sufficient, and it is not reversible unless palpably arbitrary. (*Orient Ins. Co. v. Daggs,* 172 U. S. 557, 19 Sup. Ct. Rep. 281, 43 L. ed. 552.) As the provisions of said ordinance apply equally to all liquor dealers, it does not discriminate, is a proper classification and does not come within the term "class legislation." It is contended that wholesale dealers should not be classed with retail dealers, but no valid reason is advanced for excepting them from the provisions of said ordinance, as the charter of Boise City authorized the regulation of wholesale as well as retail dealers.

In *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. Rep. 273, 31 L. ed. 205, it was held that legislation by a state prohibiting the manufacture of intoxicating liquors within such state to be there sold for general use as a beverage, does not infringe any right, privilege or immunity secured by the constitution of the United States. If a total prohibition of the manufacture and sale of intoxicating liquors does not infringe any right, privilege or immunity secured to the citizen by the constitution, certainly a prohibition of the sale of such liquors for six hours out of twenty-four hours would not infringe such right, privilege or immunity.

The council of Boise City is empowered under the provisions of its charter, granted by the state legislature, to regulate the sale of intoxicating liquors within Boise City, and the provisions of said ordinance are not unreasonable nor do they infringe upon the right, privilege or immunity of any citizen. In *Mugler v. Kansas, supra,* it was held that it belonged to the legislative department to exert what is known as the police powers of the state, and to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health or the public safety; subject, however, to the power of the courts to adjudge whether any particular law is an invasion of a right secured by the constitution, and also holds that the legislature did not interfere with nor impair anyone's constitutional rights of liberty or of property by the enactment of said prohibition law. Yet it may determine that the manufacture and sale of intoxicating drinks for general or individual use as a beverage are or may become hurtful to society and constitute therefore a business in which no one may lawfully engage. But in the state of Idaho, the manufacture and sale of intoxicating liquors are not prohibited, but the legislative department has the authority to regulate its manufacture and sale. The provisions of said fourteenth amendment of the constitution of the United States does not take from the states the power to enact reasonable police regulations, and does not restrain the legislative power from enacting laws for the protection of the safety, health or morals of the community. Prohibition of the use of property for purposes that are declared by valid legislation to be injurious to the health, morals or safety of the community cannot in any just sense be deemed a taking or an appropriation of the property for public benefit or without due process of law. The above principles are amply supported by reason and by a long line of decisions. The business of manufacturing and selling intoxicating liquors is one that history and experience show requires legislative restraint and supervision, and even after the manufacturers have erected large plants for the manufacture of such liquors in any state, the legislature of such state may enact a prohibi-

tion law and make it unlawful to manufacture such liquors, as was held in the case of *Mugler v. Kansas, supra.*

It was held in *Crowley v. Christenson,* 137 U. S. 86, 11 Sup. Ct. Rep. 13, 34 L. ed. 620, that ''there is no inherent right in the citizen to sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. It may be entirely prohibited by state legislation or be permitted under such conditions as will limit the evils. The possession and enjoyment of all such rights are subject to such reasonable conditions as may be determined by the governing authority of the country essential to the safety, health, peace, good order and morals of the community.'' In that case it is recognized and also is a well-known fact in history that much evil results from the sale of intoxicating liquors. Liquor dealers are not permitted to engage in that avocation without first obtaining licenses therefor, and such licenses are always issued with the understanding that the granting power may reasonably regulate such a business. That business is looked upon very differently from the ordinary avocations of life. It was said in *Adams v. Cronin,* 29 Colo. 488, 69 Pac. 590, 63 L. R. A. 67, that ''these restraints are not like such as restrict the ordinary avocations of life, which advance human happiness, or trade and commerce—that neither produce immorality, suffering, nor want. This business is, on principle, within the police power of the state, and restrictions which may rightfully be imposed upon it might be obnoxious as an illegal restraint of trade when applied to other pursuits. That the right to sell liquor is not an inherent right of the citizen of the United States is beyond cavil. That plaintiff has not been deprived of any property or civil right without due process of law or denied any privilege belonging to a citizen of the United States, is equally clear.'' (See, also, *Schwuchow v. City of Chicago,* 68 Ill. 444; *Ex parte Christensen,* 85 Cal. 208, 24 Pac. 747.)

The business of selling intoxicating liquors is not considered as of equal dignity, respectability and necessity as that of the grocery, dry goods or clothing business or many other occupations that might be mentioned, and from time immemorial

its prohibition or regulation has been held to be within legislative power under what is known as police power.

The case of *State v. Nelson,* 10 Idaho, 522, 109 Am. St. Rep. 226, 79 Pac. 79, 67 L. R. A. 808, is not in point in this case. The ordinance under consideration in that case prohibited the wife or mother of a recreant husband or wayward son from going into the saloon in search of such husband or son. This court there held that that provision was unreasonable, arbitrary and oppressive. It is contended that the ordinance under consideration prohibits, and does not regulate nor restrain. There is nothing in that contention. Under the decision of this court in *St. Anthony v. Brandon,* 10 Idaho, 205, 77 Pac. 322, the court there made some observations on the meaning of the words "regulate" and "license." While it is true the ordinance under consideration prohibits the conduct of the business therein referred to during certain hours, it is a regulation of that business, and not a prohibition of it. It was said by the court in *Re Grand Jury,* 62 Fed. 828; that "to prohibit, limit, confine or abridge a thing, the restraint may be permanent or temporary. It may be intended to prohibit, limit or abridge for all time or for a day only." Restraint does not contemplate an absolute destruction of business, but rather places. it within certain bounds. The ordinance under consideration is simply a regulation and a restraint, but not a prohibition.

It is next contended that said ordinance is defective in form. There is nothing in this contention, as its objects and purposes are clearly shown from the language used therein. It is also contended that the title to said ordinance does not express the object or purpose of the ordinance. Said title is as follows: "An ordinance regulating the hours in which intoxicating liquors shall be sold in Boise City, and for Sunday closing, and providing for a penalty for the sale thereof during prohibited hours." The object and purpose of the title is to show the general character of the ordinance so that anyone may not be misled thereby. It is well settled that matters of detail need not be specified in the title, nor it need

not catalogue all of the powers intended to be bestowed. (Mc-Quillan on Municipal Ordinances, sec. 141; *St. Anthony v. Brandon,* 10 Idaho, 205, 77 Pac. 332; *Pioneer Irr. Dist. v Bradley,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295; *State v. Coffin,* 9 Idaho, 338, 74 Pac. 962.) The title is sufficient. The judgment of the lower court is affirmed, with costs in favor of respondent.

Stockslager, C. J., and Ailshie, J., concur.